# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs July 17, 2012

## KENNETH RAY HENSON v. JERI LYNN PILKINGTON HENSON

**Direct Appeal from the Chancery Court for Lauderdale County**
**No. 14,552      Martha Brasfield, Chancellor**

---

**No. W2011-02504-COA-R3-CV- Filed July 30, 2012**

---

The issue presented in this divorce case is which parent should be designated as the primary residential parent of the parties' minor children. The trial court named the Appellee/Mother primary residential parent, and Appellant/Father appeals. Discerning no error, we affirm.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

J. Thomas Caldwell, Ripley, Tennessee, for the appellant, Kenneth Ray Henson.

Rebecca S. Mills, Ripley, Tennessee, for the appellee, Jeri Lynn Pilkington Henson.

## OPINION

Appellant Kenneth Ray Henson ("Father") and Appellee Jeri Lynn Pilkington Henson ("Mother") were married on January 25, 1988. Three children were born to the marriage. Christy Henson, the oldest child, is now an adult; only the parties' two minor sons, ages 12 and 11, are the subject of the instant appeal.

Mr. Henson filed for divorce on February 11, 2011. Mother filed an answer and counter-claim on March 1, 2011. The parties entered into a temporary parenting plan on March 11, 2011, wherein Mother was named primary residential parent of the parties' two minor sons. The temporary parenting plan further ordered that the children should not be in the presence of Mother's boyfriend and that neither party should drink alcohol in the children's presence.

The trial court heard this matter on August 1, 2011. The only issue presented was which parent should be named the primary residential parent of the minor children. Both parties testified at trial. Father testified that he was living in a three-bedroom mobile home with his brother, as well as brother's wife and family. In addition, at the time of trial, Christy Henson, her boyfriend, Joshua Sinquefield, and Christy's child from a previous relationship lived in the home with Father. In total, when the two boys are with Father, nine people live in the home.

Father testified that he earns approximately $24,000.00 per year from his job, that he pays half the monthly bills of the home, with his brother paying the other half. In addition, he testified that his adult daughter and her boyfriend provide additional money through disability checks and food stamps.

For some time after the separation, Mother lived with her mother in Covington, TN. However, at the time of trial, Mother testified that she lives in a motel in Dyersburg where she also works as a maid. Due to the lack of a kitchen in her motel room, Mother testified that she takes the children to her boyfriend's home to cook meals, but that the children had never been in the presence of Mother's boyfriend.

The parties testified that both minor children have learning disabilities and participate in special education programs at their school. The children also see a doctor for various attention deficit disorders, for which both children take medication. Both parties testified that Mother takes the children to the majority of the doctor visits and school meetings. While Father testified that he gives the children their medication when they are with him, when questioned, Father was unsure of the prescriptions that the children were taking for their disorders and was unable to say definitively whether the children had received their medication in the days prior to trial. In contrast, Mother was fully aware of the children's prescriptions; in fact, when the children stay with Father, Mother apportions the medications into a pill box for each child so that Father can easily give them the medication. Father expressed some confusion as to which pill box belonged to which child, and admitted that the he does not always know when, or if, the children get their medication when they are in his home.

Joshua Sinquefield testified regarding both homes. Christy Henson and Mr. Sinquefield lived with Mother and Mother's boyfriend prior to moving in with Father. Mr. Sinquefield testified that, during that time, both Mother and her boyfriend drank alcohol and smoked marijuana at boyfriend's home; Mr. Sinquefield also implicated both Mother and Mother's boyfriend in other illegal activity, including theft. However, Mr. Sinquefield testified that he and Mother did not get along. Specifically, Mother was not pleased with the fact that Mr. Sinquefield was not employed. The disagreement between Mr. Sinquefield

and Ms. Henson culminated in Christy and Mr. Sinquefield moving from the home with Ms. Henson to Mr. Henson's home. According to Mr. Sinquefield's testimony, no alcohol consumption takes place at Father's home.

The two children testified in camera in the presence of the attorneys for the parties. Both children testified that they preferred to live with Mother, particularly because Father's house had so many people and they did not like Father's brother because he was mean and called them names.

At the conclusion of the trial, the trial court issued a bench ruling, finding that it was in the children's best interest that Mother be named the primary residential parent. In reaching its decision, the trial court noted that Mother's living situation was not ideal, but considered the children's needs regarding doctor visits and school, as well as the fact that Mother almost solely took care of administering the children's medication.

Mr. Henson appeals. The sole issue on appeal is:

> Whether the trial court erred in naming the Appellee/Mother the primary residential parent?

Upon initial review of the appellate record, this Court determined that the order appealed was not final as it did not adjudicate Mother's request for attorney's fees. In response to our order, Appellant filed a supplemental order with the appellate record. This order, filed on January 26, 2012, now appears to be final for purposes of appeal.

Because this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Tenn. R. App. P. 13(d). In applying the *de novo* standard, we are mindful that "[t]rial courts are vested with wide discretion in matters of child custody and that the appellate courts will not interfere except upon a showing of erroneous exercise of that discretion." ***Hyde v. Amanda Bradley***, No. M2009–02117–COA–R3–JV, 2010 WL 4024905, at *3 (Tenn. Ct. App. Oct.12, 2010) (citing ***Johnson v. Johnson***, 169 S.W.3d 640, 645 (Tenn. Ct. App. 2004)). Because "[c]ustody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility during . . . proceedings," appellate courts "are reluctant to second-guess a trial court's decisions." ***Hyde***, 2010 WL 4024905, at *3 (citing ***Johnson***, 169 S.W.3d at 645).

In fashioning parenting plans, Tennessee Code Annotated Section 36-6-401 advises courts that:

The general assembly recognizes the fundamental importance of the parent-child relationship to the welfare of the child, and the relationship between the child and each parent should be fostered unless inconsistent with the child's best interests. The best interests of the child are served by a parenting arrangement that best maintains a child's emotional growth, health and stability, and physical care.

\*        \*        \*

Most children do best when they receive the emotional and financial support of both parents . . . .

Recently our legislature amended the child custody statute to include a statement emphasizing this policy. *See* 2011 Pub. Acts, ch. 433, § 1 (effective June 6, 2011). Tennessee Code Annotated Section 36-6-106(a) now provides, in pertinent part:

In taking into account the child's best interest, the court shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out in subdivisions (a)(1)-(10), the location of the residences of the parents, the child's need for stability and all other relevant factors.

Accordingly, Tennessee courts must now fashion parenting responsibilities so as to give each parent the maximum amount of time possible with the child, in accordance with the child's best interests.

In determining the child's residential schedule, the court must consider the factors set forth in Tennessee Code Annotated Section 36-6-404(b). In relevant part, those factors include:

(1) The parent's ability to instruct, inspire, and encourage the child to prepare for a life of service, and to compete successfully in the society that the child faces as an adult;
(2) The relative strength, nature, and stability of the child's relationship with each parent, including whether a parent has taken greater responsibility for performing parenting responsibilities relating to the daily needs of the child;

\*        \*        \*

(5) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;
(6) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;
(7) The love, affection, and emotional ties existing between each parent and the child;
(8) The emotional needs and developmental level of the child;

\*       \*       \*

(11) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

\*       \*       \*

(13) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;
(14) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;
(15) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and
(16) Any other factors deemed relevant by the court.

From the trial court's statements from the bench, it is apparent that it considered many of the foregoing factors in reaching its decision to grant the primary residential responsibility to Mother. From the record, we conclude that the evidence does not preponderate against this finding. As noted above, these children have special needs. They both suffer from attention deficit disorders, for which they must take several medications every day. In addition, they require special education at school, and both read at grade levels much lower than their actual age group. Consequently, it is imperative that these children have as much stability and continuity in their lives as possible. Although, as correctly noted by the trial court, neither parent's living situation is ideal, from the record, it is clear that Mother is more actively involved in taking care of the children's day-to-day needs. Unlike Father, when questioned, Mother knew what medications the children took, and when. She knew what school programs they were in. Moreover, Mother, not Father, is the parent who attends the

children's school meetings and doctor's appointments. When questioned, both children indicated a desire to live with Mother; both children specifically stated that they felt "safe" with Mother.

On the other hand, both children stated that they did not feel safe at Father's home. Each stated separately, and out of hearing of the other, that Father's brother, who lives in Father's house, called them "retard." They testified that there are too many people at Father's house. From Father and Christy Henson's respective testimonies, it seems that the children are often unsupervised while at Father's home. Father works Sunday through Thursday outside the home. He testified that he usually leaves for work before the children get up in the morning, that he is not sure what time they get up, and that he does not know whether they eat breakfast or take their medications. In fact, Christy Henson, the adult sister, is the children's primary caregiver when Father is at work. Christy, like her brothers, takes medication for mental illness. In addition, Christy has her own child to care for; Ms. Henson testified that "it is too much" for Christy to also care for her brothers. Father further testified that the children do not have a set bedtime at his home and that they stay up "pretty late" playing videogames with the other children who reside in Father's home.

Although Mother lives in a motel room when she is with the children, her testimony reveals that the children have their own bed, and that she is able to prepare meals at her boyfriend's home to reheat at the motel. The children's testimony was that their Mother does supervise them, checking on them throughout the day while she works cleaning rooms at the motel. They testified that they feel taken care of while with their Mother. There is no indication in the record that Mother lives with her boyfriend while she has the children; rather, she testified that she only goes to his apartment to prepare meals and do laundry for the children while the boyfriend is at work. She sees boyfriend on the weekends when the children are with their Father.

From the totality of the circumstances, and in light of the factors set out in Tennessee Code Annotated Section 36-6-404(b), *supra*, we conclude that the evidence does not preponderate against the trial court's finding that Mother is best suited to be the children's primary residential parent.

For the foregoing reasons, we affirm the order of the trial court. The case is remanded for all further proceedings as may be necessary and are consistent with this opinion. Costs of this appeal are assessed to the Appellant, Kenneth Ray Henson. Because Mr. Henson is proceeding *in forma pauperis* in this appeal, execution may issue for costs if necessary.

_____
J. STEVEN STAFFORD, JUDGE